Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is number 24-1769, United States v. Sheriff Cooper. At this time, would counsel for the appellant please come to the podium and introduce herself on the record to begin. Good morning, your honors. Judith Meisner representing Mr. Sharif Cooper. May it please the court, I would like to reserve three minutes for rebuttal. Perfect, you may. Thank you. The distinction between elements of an offense and means of committing an offense is part of ensuring that a defendant receives the constitutional guarantees of the Fifth and Sixth Amendments, that each element of an offense be proved beyond a reasonable doubt, and that they be found unanimously by a jury. The indictment in this case charged simply in the statutory language that Mr. Cooper did knowingly in an affecting interstate commerce recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, and solicit by any means a person knowing and in reckless disregard of the fact that means of force, threats of force, fraud, coercion, and any combination of such means would be used to cause Minor A, the person, excuse me, to engage in a commercial sex act, and knowing and in reckless disregard of the fact that Minor A had not attained the age of 18 and would be caused to engage in a commercial sex act. We submit that each of these ten statutory acts is an element of a distinct offense, rendering this indictment duplicitous and requiring dismissal, and if not dismissal, either election or specific. If the indictment is duplicitous, wouldn't, like, probably more than half of the indictments filed by U.S. attorneys' offices be duplicitous? Because in my experience, they usually track the statute, and again, it's really a matter of giving notice what the charges are, and then as the proceedings go, you know sort of exactly what's going to be, if there's going to be a trial or if there's a plea, you know exactly what's going to happen. Well, that would depend on whether the statute contains separate elements or separate means. If it's separate means, then it's not duplicitous. If they're separate elements, then they are. Counsel, I hope you can hear me. I know there's certain statutory factors that we have to look at to do the analysis of whether a particular statute, the text includes means or elements, and the government has given its assessment of why it thinks this statute just lists means rather than elements. What do you think, in terms of the statutory text, provides the best support for your argument that these are actually elements and not means? Okay. Well, first of all, the statute, after listing the ten verbs or acts, says by any means, and then it continues using the term means. Ms. Mizer, doesn't that really just mean you can entice someone with money, with candy, with baseball cards? There are many ways to do that, so that's just saying within these things, whether they're means or elements, you can do it in any of the, you know, infinite number of ways we can imagine doing these things. I'm not sure why that's the... Well, that is one use of the word means that I think shows that when Congress wishes to say that there are alternative ways, methods of committing the same act, then they specify. In the next section of the, in the next part of the sentence, they talk about these acts committed by any means, knowing or in reckless disregard of the fact that four other means or combination of means would be used to cause the person to engage. So they're, again, distinguishing, they're saying these are means and not elements. Counsel, what about the other aspects of the statute that the government has pointed out? So it says that all of these verbs are listed in one line of statutory text, that they cover essentially overlapping conduct. There isn't a different penalty depending on which verb is at issue. And those are three elements of the statutory text that in the government's view say the better construction is really that these are means and not elements. Okay. Well, first in terms of a single line, the bank robbery statute also has a single line that talks about robbery intimidation, force intimidation and extortion. So you talk a lot about bank robberies. So that was interesting to me because there's the force part and there's the intimidation. Those are separated by an or. We think of those as means, right? You don't have to agree unanimously on whether it's force or intimidation. Extortion is an entirely separate sort of way of committing a crime and sort of the way that I think violence versus age of the child here, that seems more like extortion versus robbery. And intimidation in force seems more like the list of things. Right. But the extortion is in the same line. And this court held in King. Okay. So how do you figure out why force is one thing and intimidation is another, but we say those are means and extortion is something else in bank robbery? Why? What makes extortion different as an element but force and intimidation are means? Because of the difference in the manner of commission is sufficiently broad, is sufficiently different that the court has decided that these are elements of separate crimes. Because you wouldn't want three jurors finding intimidation and nine jurors finding extortion. And you don't have a unanimous verdict because you don't have elements. And yet here, but we're okay with nine jurors finding force and nine jurors finding intimidation. And when I look at this, I see, you know, verbs, and this is one of the government's arguments, that have some overlapping trying to capture a universe of conduct. And that's the reason to think of it as means. Well, some of them do, but many of them do not. You patronize and provide could be viewed as mutually inconsistent. Transporting and harboring are unrelated. Transporting and advertising are not related. Advertising versus harboring and maintaining are not related. You have a very broad array of conduct that is encompassed in this statute. Counsel, what if we put the advertising to the side for a minute and just looked at what's in subsection one? Would you be, is your argument that even whether somebody recruits or entices somebody, would those be two separate elements, two separate crimes in your view? Even the difference between recruiting and enticing? I think that you could, you would have two separate crimes. You can have the same kind of conduct that falls on, within two different statutes. But I guess what I'm saying, what I'm asking is, you know, what about the text here really should lead us to think that what Congress intended, because that's really our question, is to have a different crime for recruiting versus enticing someone when there's no different mens rea for those two actions. There are no different penalties. Those are overlapping types of conduct. So what really could you point to that suggests that despite all of that, we should conclude that Congress viewed those two actions as different crimes? Well, I'm looking at the whole array of the acts. No, I understand. But your argument would require us to also conclude that recruiting and enticing are two different elements, correct? Well, you could or you could also find that, at least in part, that this statute is duplicitous in that it contains more than one offense in a, in the indictment that, for example, that advertising and patronizing are different offenses and you perhaps need not reach the entirety of whether entice and recruit are separate offenses. If we concluded that advertising was a different offense, would that, what would that, how would that cash out in this case? Because it seems to me from the record that was definitely not what the case was tried on to the jury. Oh, the case was tried on the back pages ad. That was the government's argument in the district court for, excuse me, interstate commerce that he, that Mr. Cooper advertised J.C. on back pages and back pages was an essential part of the government's case. Can I ask you if you, I'm just trying to make sure I understand the argument in your brief. If we say we disagreed with you that count one was duplicitous, are you still making an argument that even if we disagree with you on that point, you were still entitled to the unanimity instruction that you requested and can you explain why? Sure. The, if it's duplicitous, then clearly unanimity instruction is required. But there are cases that are cited in the reply brief holding that an instruction, a specific unanimity instruction is required where there's a genuine possibility that a conviction could be based on different jurors concluding that the defendant committed different acts. And there's a fifth, the fifth circuit has a pattern jury instruction for section 1591 for sex trafficking, excuse me, that suggests that a unanimity instruction should be given where the indictment charges multiple acts of different types. Why is that right? I mean, it seems to me if they are means, then the whole idea is the jury doesn't need to be unanimous. That's the concept of a means versus an element. Except I think that these courts are saying that where you have such a wide variety, perhaps, of means, that in order to preserve the right to a verdict based on a jury that is unanimously deciding that the defendant committed a, that the defendant's acts were an offense, that what the defendant did was a crime, that there should be some agreement, that there must be agreement as to what the defendant did. And the line there would be just sort of how broad the means sort of description is. Like in my, you wouldn't suggest in my bank robbery violence versus intimidation, we'd have to tell the jury you have to agree unanimously on which of those it is. No, I think it's the breadth, the variety and the breadth that would require a unanimity instruction. Is that, do you think that's consistent with our case law on the difference between means and elements and what that means? I don't think this court, I don't think this court has decided, I don't think you would have to disagree with any case this court has decided in order to find that. A unanimity instruction would be appropriate. But haven't we said, similar to what Judge Aframe just asked, haven't we essentially said if there, if the actions in a statute are means rather than elements, then there does need to be unanimity on which of the particular means was used. Well. So how would we overcome that in your view? That none, that those cases did not address a statute of this breadth and variety. Ms. Mizer, could you talk a little about the venue problem in the case for me? Sure. The venue issue arises in connection with the forced labor count. The forced labor count was based on J.C.'s employment at a strip club, a non-alcoholic beverage strip club in New York when she was under 18. The government argued that opposed dismissal. The defendant moved to dismiss count three, saying that there was no venue in Massachusetts because this was stripping in New York. And the government opposed that, saying that the offense began in Massachusetts. You had a trip to New York in April for a. . . So there was a false start trip where it didn't happen, right? Right. And then she comes back to Massachusetts. Right. And then. . . They moved to New York finally to stay in New York on June 1st, June 1st or 2nd. There is then obtaining a fake I.D. at some point after that. And it would seem close to September because that's when she started her employment there. I guess what I'm trying to understand. So she does seem, I think, testifies that while we're in Massachusetts, the defendant is giving me the idea that if I don't go do this strip club job in New York, I will have to continue to do prostitution in Massachusetts, which would seem to be the threat, the force to get the labor. What I guess I'm wondering in this case, which I don't fully understand, is when does a judge. . . So maybe there's an. . . Let's just assume for the purpose of this question there is enough evidence that there could be venue. Let's just assume that. How does it. . . When does a judge have to instruct to let the jury decide that versus when not? I don't understand how that works. I think when there is some factual basis supporting the claim that there is no venue and that at that point then an instruction is required. And so like take maybe either legally or factually a jury could disagree with the fact I just said, assume proves venue. Does there need to be an instruction there? I mean, how does a judge. . . Make that determination? Because the defense was distinguishing between preparatory acts and the commencement of an offense. Whether or not forced labor is a continuing offense is really not relevant to this issue because the question is where did it begin, not where it continued or where it concluded. Why is it where did it begin? If it's continuing, isn't it in any act in furtherance of the crime? Well, it's a question of if it began in New York, it continued and concluded in New York because she wasn't. . . But what if it began in New York and you come back to Massachusetts to try again your labor and she's being forced to do that by telling you if you don't agree to go back to New York, you're going to continue to prostitute in Massachusetts. Wouldn't that be in furtherance of the ultimate labor that she commits in New York? Just coming back to Massachusetts? And then in Massachusetts being told by the defendant, we're going to go back to New York, you're going to work at that strip club, and if you don't agree to do that with me, I'm going to make you prostitute in Massachusetts. Well, then again, I guess it's a question of whether these are preparatory acts or whether it is the commencement of the offense. Or part of the offense. Yeah. Because part of the offense is the forcing of the labor.  But the question is, I guess my question is more on the jury instruction point, and it hinges on whether there's a dispute of fact about it. Is that the way to think about it? I believe that it's whether there is a dispute of fact that rises to the level of something that the jury should make a determination of. Okay. Any further questions? Thank you. Okay. Thank you. A chair from the government. Please introduce yourself on the record to begin. Absolutely. May it please the Court, Randall Crum on behalf of the government. To start with the divisibility issue, and I can talk about it for only a brief time if you want to talk more about the other issue, but we do think that the text and, in addition, the legislative history and the progress of development of the statute are all important indicators here that show that these were intended to be means by Congress and that that's what they did in creating this list of factors to which they have added over the years in the interest of being comprehensive and making sure that all sorts of acts involved in this market are covered. And I think that we point out the textual parts, as the Court has noted, that they're all in one sentence. I would note a factor I didn't happen to point out in the brief, but noted in Rojas Tapia, which is not an or between each one, which tends to set out them as individual things. They are just in a list of commas with an or at the end, so that's a small textual factor in favor of treating them as means. And then the fact that there's the same penalties that the rest of the factors are also related. How do you deal with advertisers, which then triggers the cascading effect of advertisers as a different mens rea for the subsequent elements that have to be proven? So how does that, because it seems to me a jury would have to agree at some point, unanimously, that it's advertising to move on to the different mens rea. Advertising does run in, I mean, Bradford, the one case that addressed it, held that it was not a separate crime, but it's simply another in the list that has a different mens rea attached to it. How does that work? That's, I guess, my question, because it seems like to make that decision that we're going to apply this different mens rea, we'd have to all agree we're heading down the advertising road, so we have to do this other thing. Well, I would not necessarily say so, Your Honor, because it's possible that if you're just trusting the jury to follow instructions, that those juries, if we're okay with them choosing any one of the options and being different about this, that those follow advertising. What happens if six jurors think it's recruiting and six jurors think it's advertising? Then what? Well, I mean, again, if there are means, then we don't really care about that. But it requires a different mens rea. Right. But Bradford is the case that addresses it and says mens rea doesn't always mean that they have to be separate. No, I understand that, but several of the arguments you made in your brief don't work as well for the advertising. And Your Honor asked the question about how does advertising play out. You may have seen me flipping through the closing argument. We didn't specify advertising. It's absolutely true that the back page ads were in there, but we usually, in our closing arguments, we did not emphasize that. In fact, it was mostly on the other forms of enticement and that kind of thing, recruiting. Those were the ones we focused on. So I'm not sure, and as also pointed out. But it seems it goes to statute for interpretation. I mean, Congress has this list, and then it talks about the act constituting the violation. If it's advertising, do this other thing. So it seems like the concept of that read together is we expect that juries are going to agree on which of these things it is, because if they agree it's advertising, they're going to do something else. Well, I think there's two answers to that. One is that I point out advertising is a relatively late addition. And a lot of the argument, which I think because the legislative history and Congress's intent is what we're really trying to get to here, suggests that these were a uniform set of things. In fact, they had a defined term associated with them in the original enactment. So to the extent that we look at advertising, I don't think it's permissible to sort of make sense to read back and say, Congress 20 years earlier thought because they later added this one with a different mens rea, especially when we do know from legislative history what they were trying to do with that, that one could say that that makes everything else different than what it would have been up to that point. But what if we were convinced that at least for the purposes of all of the actions versus advertising, there are two different crimes. One is the advertising crime and one is everything else. What would the government's position be on what we should do here? Because as you said, and my assessment was you didn't focus on that at the trial, but it was certainly part of the trial. It certainly was. I mean, I would say that it's not an argument that was raised in the appellate brief. It's a separate argument that the real problem here is that advertising should have been carved off. So I think it's waived. I don't think that was an argument that was made below, so I think it's forfeited as well. There was no suggestion that the real problem with this indictment is that it should have been two, one on advertising, two counts, and one on everything else. So that's, I mean, again, that would be breaking it apart in a way that nobody argued below. And that's, I think, important because this is a difficult issue. I mean, and Your Honors are obviously fastening onto it. But I also think it would be harmless. And certainly they couldn't show prejudice given the wealth of information showing that the other thing, certainly recruitment, enticement, obtaining, those kinds of, which were, I think, the focus of the argument. So I think we would argue that it's, if not waived, forfeited, but certainly not, wouldn't affect the verdict in this case, even if one were to carve out advertising and say that it operates separately from all of the others. Because you think it would be harmless. I think it would be harmless. But I would also, again, I think that on the point of, I do think, push back just one last time, is I think that the idea that jurors should be instructed, if we are okay with them viewing each of them separately, that if you, juror one, are thinking advertising, you have to look at it this way, doesn't necessarily take away from the idea that they could all be means. I mean, I think it does suggest that if you are following that path, then if that's one you are thinking about, you need to apply that mens rea. But I just don't know that that, to my mind, against all the wealth of other information, suggesting that the interest here was in a cohesive plan of acts that would cover the same set of offense, same sort of territory, that advertising is part of that, which Bradford found. Wouldn't we not be here perhaps on this issue if either of the parties or the district judge had, because there was no impediment for the district judge to provide a specific verdict for him, which means that you find, right? The district judge could have done that. The district judge certainly could have done it. But, I mean, again, I don't think there's a good argument that these, across the board, these are different elements. But your position, just so I understand this, these are all means, including advertising, and then you would tell the jury, if some of you think it's advertising, head this way, and if some of you think it's enticement, recruitment, whatever, head that way? Well, I guess... I've never heard of that. Well, no, no. Your Honor, I mean, and this is just thinking off the top of my head, but you pointed out that, like, was it intimidation? In the bank statute, those each are probably defined terms. Presumably, the judge tells you you can find, I can't remember the two that Your Honor mentioned, but intimidation and the other one that are considered both means. Presumably, those are each defined. So each juror knows that if I'm thinking intimidation, I've got to follow the definition of intimidation. If I'm following the other one... a way to confirm that all of the jurors, if they had convicted based on advertising, had recognized the mens rea distinction. There's no way to confirm that, right? But in the same way with the example that Your Honor gave, which is if it's intimidation and, again, I'm forgetting the other word. It's force. Force or intimidation. Force is probably defined. Intimidation is defined. We assume that the jurors who were thinking force looked at the definition of force. We're assuming the jurors who picked intimidation looked at the definition. They both had to be knowing. Right. Excuse me? They both had to be knowing. They didn't have different mens rea. Right. Yeah. No, true. I'm just using more the point is that different things that are means can require additional steps by the jurors. I mean, you would agree that at least counsel's in favor of the other side. Maybe it's not just us. I mean, advertising is the strongest argument for the defense here. And, again, I think it's an argument that hasn't been separately raised here and I think would also be harmless. I also think it was very clearly not raised below either because it was all that this was under math as separate elements. One last point I just want to make because I think it relates a little bit to what would this mean for the statute. And, you know, we talk about, I think, the overlapping nature of the way that's similar to kidnapping. In that respect, there's a lot of things that are quite similar, harboring and maintaining. I mean, many of these things sound like they would cover exactly the same conduct. In a world where these are elements, the government would charge multiple offenses, each having a 10 to 15 year mandatory minimum and probably get convictions on most of them because they're the same thing. So I think that's another thing just in terms of the sort of results that makes one questions why. Well, there would be one mandatory minimum. I mean, that wouldn't probably make much difference. But if they're all separate crimes, I mean, if the thing is that we have to charge and prove each one of these separately, then, I mean. But you can charge and just cite the statute. But then when it comes to trial, then you have to pick and choose. And absolutely. And in this case, I think we did, again, just looking at the closing argument, focus more on the enticement recruitment sort of aspects. Because we were arguing for it, and the jury agreed, force, fraud, and coercion. And it's hard to see how advertising is by force, fraud, and coercion. So I think there was definitely that was the focus of the argument, which goes back to the harmlessness point. Can I ask you about the venue issues? So like Judge Aframe, I was trying to figure out when a jury instruction would be necessary. So I understand from your brief, your position, that it wouldn't have been appropriate to grant the motion to dismiss for all the reasons you described. But once the case was being tried to the jury, given that there was what seems to me a valid dispute about whether venue exists, why shouldn't the district court have charged the jury with resolving whether there was venue? Well, I mean, there's one point, just a threshold issue. I do want to raise the issue of waiver here, because I think it's very important that the issues of the relevant case law, which Perez has won such a case, but there are many about when to give a venue instruction, which is different from a theory of defense instruction, were not raised in the opening brief. And that's why we respond first to the argument that was made, which is if you make a theory of defense instruction, it has to be accurate, and this one was not. So there's an argument that wasn't developed below or on appeal, that the court was required to give its own correct, in our view, continuing offense venue instruction. Counsel, let me just ask you just one follow-up about that, since you brought up waiver. From what I can tell, and you can tell me if you disagree, that wasn't the district court's position, though. I understood the district court's position to be just sort of full stop, no venue instruction was appropriate. So how do you think that impacts the waiver argument that you're making? In other words, the district court didn't say, I don't think this instruction is an accurate statement of the law, and for that reason I'm declining to give it. The district court just said, I'm not instructing on venue. So I'm trying to understand how we should evaluate your argument in light of that. In the sense of legal arguments, the fact that the district court didn't necessarily do that, the point is what the argument was made on appeal and what the argument was made below. Specifically, and again, I would point to the defendant's brief. How about the guts of it? When does a judge have to give a venue instruction when the defendant put aside this problem you've pointed out? Call into question venue. So they say, continuing offense, we say this was preparatory, you say it wasn't. When does the judge have to let the jury decide that? I think Perez is a thoughtful case. As I note, it reviews the law of a number of different circuits, which have found different tests as to when the jury can or must have the question of venue versus when the court can decide it. And there is a multiplicity of different views on this, which is another reason why the government has suggested that maybe just enforcing the waiver makes sense because you don't have full briefing on the multiplicity of tests the courts have applied, and they do differ in significant ways. But what Perez suggests is probably an apt summary. It suggests where it's been timely requested when there's sort of a genuine factual issue going to venue. Then you should give it to the jury, otherwise it can be decided as a matter of law. And I think one of our arguments would be here, again, with the overlay of waiver and forfeiture, because these arguments weren't made, is that there was not really a factual issue about the questions that was accurate that went to the question of venue. That is, the testimony of the victim was that they were planning to do it, that she had been told she could stop prostituting when she went there to do it, that they went there to get a fake ID, they came back, prostituted her again, went back and did it again, and it was all part of a plan or a scheme or a threat of force, as Your Honor has suggested, all of which would suggest venue in Massachusetts. The defendant simply said, none of this happened. I didn't force anybody to do anything. He didn't suggest or give them a toehold to say, you know, no, when it came to the prostituting that was on her, I wanted to... You know, there was manifold evidence of forceful behavior and threats. During the time that they were driving down to New York, he broke her phone so they wouldn't be able to be tracked by it. As soon as they got there, he was sending her threatening messages. So there's sort of a... In the government's view, certainly at the level of plain error that the court could have found, not suggesting this is what the court did, that there was simply not a factual issue that had been raised to put at issue the specific fact. He didn't say, I didn't have any plans to go to New York and prostitute her. In fact, he said, I knew about Juniors from a prior person I had worked there. I wanted her to work there. Again, that is one question that could have been thought about by the district court here, agreeing that it was not. Counsel, just to make sure I'm understanding your arguments, the way that I read your brief, assuming it's a continuing offense, there's sort of the, was the crime begun, continued, completed? And my understanding of your brief is that you're really focusing on the begun. You're not suggesting that the crime, that the forced labor offense, continued or was completed in Massachusetts, right? I think that given the plans that preceded the first trip to New York and the return, one could say that it continued as well. But that wasn't the argument you focused on in your brief. The particular argument in our brief was that it was primarily shown by the fact that the plan was begun there, which would be true in either case, it would be continued. So if, given the arguments by the defense that actually it was all preparatory so it wasn't really begun, I understand your waiver and forfeiture issues, but let's just put, if we can just put those aside for a moment, if it had been presented in a way that you think was more clear and not forfeited, would you agree that in that circumstance there should have been an instruction? Because it was debatable whether it was begun or it was just preparatory. Well, I would say I don't know that, I wouldn't actually agree with that characterization, that this could be preparatory. The government's view, actions stop being preparatory when they begin to affect, be placed into effect against the victim. I understand that you disagree, but I think the question is, is it debatable enough that it should go? Of course you will disagree. That's your position. But isn't the whole point that if there's anything remotely resembling a genuine dispute, to use summary judgment language, that it should go to the jury? I just want to clarify the nature of my difference. I'm not disagreeing. What I'm saying is that in the government's view, as a matter of law, if you believe what she said, that's not a preparatory act. Once a threat has been leveled against the victim, if they believed her, I think, and taking everything else off the table, if they believed her and that's all we had, I think that would, as a matter of law, establish venue, because that is the threat of force in Massachusetts to accomplish that. So if they believed her that he forced the labor in Massachusetts, then you don't ask a jury anything because? No, that would be if it was not put at issue. We're sort of here in this middle second step of like it was meaningfully put at issue. It sort of bleeds into the harmlessness argument that we made, and I think there's a separation there I just want to call attention to. I mean, on the threshold question of whether it was put in dispute, my main point is that there was nothing that he said that suggested in any way that countered her particular we had plans for me to strip in New York in Massachusetts. But even saying that even his general, I just wanted to move to New York because my family was there, put it at issue. So you're taking your point. Then I think at that point, if that was putting it at issue, then it should have resulted certainly under Perez, and I think under many courts, but not this court at this point, that should have resulted in a venue instruction. And then the question is, as we know, the harmlessness of it in light of what we know, the verdict that the jury did found that there was force fraud and coercion in Massachusetts, there was force or threats of force in New York, and there was an intent to prostitute her while moving her from Massachusetts to New York. It requires us to believe that the jury would have said for that brief shining moment when he was driving to New York he suddenly had objured any interest in threats of force with respect to what she would do down there, and he was just saying that, oh, for this moment I'm just going to let you do what you want to do in New York, and then he gets there and forces her, as the jury found, forces her to labor for his benefit. So I think that harmlessness argument is simply that there's on these facts, and given the continuing nature and the testimony, again, not contradicted in this respect, the defendant just simply said I didn't do any of it. He didn't say I was threatening her in Massachusetts, but I turned over a new leaf. Things changed for me. Simply the evidence was that the continuing stream of conduct involving force and threats affecting both crimes and continuing through the period. So that's where the harmlessness argument comes in, which we also make in our brief. Counsel, I'm just going to go back very briefly to what I was asking about the jury instruction and the means, because what's coming to my mind is an analogy perhaps to like a death penalty trial when you have the penalty phase, and in the penalty phase the government always picks each aggravating factor, and the jury has to unanimously find that aggravating factor beyond a reasonable doubt unanimously. And here, you know, there's all these means. So how can we know? You know, that's what's troubling me, and, again, I'm using the death penalty as an analogy, but the verdict forms are crafted so any judge, anybody can see what the jury agreed to unanimously. I would say, and this is, Judge Rickerman mentioned this point, the First Circuit's law I think is very clear that the question of a unanimity instruction is tied directly to the question of whether it's a duplicitous indictment. That's not just Verrecchia, but it's in Newell, and they specifically say if the question is in unanimity, the question before us is how many crimes have been committed. And so to the extent there's a suggestion in the briefing that sometimes a unanimity instruction is useful just to be helpful, to avoid confusion, that hasn't been the First Circuit's view, that you can have a reversible error on a unanimity issue without finding duplicity in the indictment to begin with. So, you know, I understand the point that there's a sense that, you know, there's times when we require them to be unanimous, but in the First Circuit's view, that all follows from the question of deciding whether this, in fact, is a one crime or many. How do you resolve the use of means in the second paragraph that says, you know, you can't do this using the means of force, threats of force, fraud, coercion? So they use means there and then give a bunch of things that you might be confused about. Are those elements or not? Fraud is different than force, but they're telling you clearly means. And then above, they don't use the same formulation. So in writing this statute, it seems like they had means as an understanding when that problem also could arise, dealt with it, and didn't deal with it in the same way when they're listing the verbs. Right. I mean, one argument is that when they really wanted to indicate that what follows is means, they did it the way they did second times. When you say by means of and then list them, you are obviously attaching the word means, whether, again, whether we give it that heightened legal significance that they always mean it in a means versus element sense. They're saying by means of. Because you could say inter-affecting interstate commerce by means of recruitment, enticement, harboring, transporting, providing, blah, blah, blah. Right. You could write it that way. And then you would have the parallel way, and they didn't choose the parallel way. Right. And, again, hard to know exactly what was going on there. But it does ‑‑ I don't think they're, as Your Honor has pointed out, putting it at the end here has a rationale that we understand, which is that each of these terms are broad and by any means is a way of saying, however the different ways you can accomplish them, they would be satisfied. But, you know, I understand. It's not a situation where all clues point in exactly the same direction all the time, but I think this is one where, again, the overlapping nature of them I think is a strong one, like kidnapping, like other crimes where that has happened, but also uniformity of punishment, the history of development, the sense that Congress has always been interested in being comprehensive and not trying to create loopholes that would exist if we had to separately charge and jurors had to agree, was this more like enticing or was this more like recruiting? You can imagine both the complexity of those cases, but you can imagine the trouble the jury would have trying to figure out what they thought of those cases. Well, I guess that's what I don't understand. I understand the comprehensiveness argument, but the way to solve it is don't give the jury, like, six choices. If these things shade into each other, give them the one you think is best, and then that's what the trial is about, and this problem doesn't really happen. Well, I mean, I think this is an issue probably any time, again, kidnapping, other cases that happen, and we note that there's a number in the sex crimes area that have, like, long verb strings, that any time you charge using the statutory language, you run the risk that people are hearing about things that don't turn out to be terribly relevant in this case. But I think, again, that's not a particular argument that was made, that it should be thinned down simply to the ones that were most germane. It was that they should be separated. And, again, I think it would be harmless on this record because the ones that were shown were clearly shown, and the jury, by the force, fraud, or coercion, separate verdict, and other things, showed that they agreed with the government's view of those things. Thank you, counsel. Thank you. Let's have three minutes for rebuttal. Please introduce yourself back on the record to begin. Judith Meisner, representing Mr. Cooper. I'd like to first address the waiver argument in the venue issue. I mean, there was a request for a venue instruction, and at the charge conference, counsel said this is with regard to venue. And Judge O'Toole, in a case, talks about when venue is contested, as it was by us, it becomes a joint issue to be decided by a preponderance of the evidence. And there's one of those scholarly cases in the Third Circuit that cited where this is laid out. These are cases we're following to propose with respect to count three where the conduct takes place exclusively in New York, and we've put venue into issue. Whether venue properly lies in Massachusetts is a jury issue to be found not by reasonable doubt, but by a preponderance of the evidence. So I think that the issue was clearly raised and has not been waived. What part of the transcript are you reading from there, counsel? I'm sorry. It's from the charge conference. It's at the appendix, volume four, pages 77 to 78. In terms of, and I don't believe there has been any decision of this court addressing whether duplicity is required for a unanimity instruction. I don't think it's an issue that's been raised before. In terms of the legislative history, the Congress was talking about a comprehensive law that did not just include this 1591 or 1589. There were a number of separate provisions addressing various aspects of human trafficking, setting up all kinds of commissions and international forums. And so I don't think that you can say that because they were looking for a comprehensive solution, they were talking about this one statute, which was part of a number of statutes, being a comprehensive solution. In terms of the, none of the acts are defined in the statute. So you're left to common understanding, which would be different from a case where you had definitions of extortion or force or violence. And I would note that the bank statute, which this court has held is divisible, does not have different punishments. It has the same punishment for extortion and for force and intimidation. So that- But those have a common law as in different crimes, right? Like common law, extortion and robbery are different crimes. So I can understand why you would think those are different crimes, therefore different elements. And these are just a bunch of trying to cover the waterfront of what people might do if they are engaged in this kind of commercial sex trafficking. And so it seems to me very different than the robbery versus extortion, where you're just trying to think of all the ways someone might do the thing you really care about, which is commercial sex trafficking, which is why you wouldn't care on the unanimity of which of the particular ways you did it. Well, but where you have such, first of all, I was pointing to the bank statute simply to point out that the same punishment, different punishments don't necessarily- Right, so that's not dispositive. But I guess what I'm trying, what seems dispositive or the difference is what I'm trying to get at, which is those are clearly different crimes as we think of crimes. And what I see here is the crime we care about is commercial sex trafficking, and there are two different ways of doing it, violence or age of child. And then we are just trying to cover the universe of ways we can envision someone might go about doing that. But you should have some kind, the jury should be together on what exactly the defendant did. And where you have this variety of acts that are not all consistent or overlapping- And yet every time it's means versus elements, that's the problem, right? The classic, did he use a gun or did he use a knife? Well, that's how he did it, but we don't, we say, well, it doesn't really matter as long as they agree he used a dangerous weapon. Well, but you have here different, you have some indications that there are differences. You've got a different mens rea, you've got the use of the word violation, which in Richardson, the Supreme Court found very relevant to determining whether you were talking about elements or means. Thank you, Counsel. Thank you. Thank you, Counsel. That concludes argument in this case.